# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SUSAN LAMBERT, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:13-cv-3484-RLV ) |
| ANGEL OAK FUNDING, LLC | ) ) |
| Defendant. | ) ) |

# **COMPLAINT**

## **JURISDICTION AND VENUE**

1. Plaintiff brings this action for unpaid overtime, monetary damages, declaratory and injunctive relief and other equitable and ancillary relief, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* This action is brought as a collective action pursuant 29 U.S.C. §216(b).

2. The Court has jurisdiction of the federal claims under 28 U.S.C. §1331 and §1367.

3. The Court has supplemental jurisdiction over the state law claims.

4. Venue is appropriate under 28 U.S.C. §1391, because Defendant, Angel Oak Funding LLC ("Angel Oak") operates in the State of Georgia, including this judicial district, and throughout the United States.

5. Venue is also appropriate under 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to these claims occurred in this County.

**PARTIES**

6. Plaintiff Susan Lambert is a resident of Kennesaw, Georgia, which is located in Cobb County, Georgia.

7. Plaintiff was, at all times relevant, employed by Angel Oak as an underwriter in its Atlanta office.

8. Defendant managed Plaintiff's work, including the amount of overtime required to be worked, for the Defendant and for all similarly situated employees.

9. Plaintiff brings this action on behalf of herself and other past and present similarly situated employees pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA") and on behalf of herself individually for intentional infliction of emotional distress.

## GENERAL ALLEGATIONS

10. Plaintiff was employed an underwriter underwriting FHA, VA and Conventional loans. In addition, she was required to audit files of new underwriters, answer all Loan Officer questions on files and helped get loans purchased that had problems in the files after they were closed.

11. This action is brought as a collective action to recover unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties and damages owed to Plaintiff, underwriters and persons in other similarly titled positions (hereinafter referred to as "Underwriters") employed by, or formerly employed by Defendant.

12. During the statutory period, Plaintiff and other similarly situated Underwriters routinely worked in excess of forty (40) hours per week without overtime compensation.

13. This practice violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* specifically § 207(a)(1). As a result of this unlawful practice, Plaintiff and the similarly situated employees suffered a loss of wages.

14. Defendant failed to pay overtime wages and other benefits to Plaintiff and the Underwriters who were similarly situated during their employment by

intentionally, willfully and improperly designating their positions as exempt from federal law in direct violation of the FLSA. Plaintiff and other underwriters supervised no other employees and had no authority to make final decisions on any files without management approval. For example, a file could not be declined unless management approved.

15. Plaintiff will immediately request the Court to authorize notice to all similarly situated Underwriters at all of the Defendant's locations located across the country informing them of this action and their right to "opt-in" to this lawsuit pursuant to FLSA 29 U.S.C. §216(b), for the purpose of seeking overtime compensation and liquidated damages under Federal law.

### COUNT I
### FAIR LABOR STANDARDS ACTION, 29 U.S.C. § 201 ET SEQ., UNPAID WAGES/OVERTIME

16. Plaintiff repeats and re-alleges paragraphs 1 through 15 as though fully set forth herein.

17. The Fair Labor Standards Act, 29 U.S.C. §207(a)(1), states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week. Plaintiff and the Class regularly worked more than 40 hours per week, but were not paid overtime. Defendant failed to pay overtime wages and other benefits to Plaintiff and other

similarly situated Underwriters by intentionally willfully and improperly designating them as exempt from the FLSA.

18. Defendant's actions were willful. Defendant was informed by the Plaintiff in August of 2012 that she and the other Underwriters were entitled to overtime pursuant to the FLSA and the Defendant refused to pay overtime. Plaintiff was informed by Defendant's management that they were paid bonus on files completed in lieu of overtime. The bonus was $50.00 per file during the week and $100.00 per file on weekends. Defendant was aware that underwriting a file took 3-7 hours (as the files were either poorly processed or an "upfront" underwritten file [a file that had not been processed yet and therefore required many more conditions when underwriting]) and that the bonus paid did not equate to an amount equal to overtime paid on the same file. Moreover, the Defendant knew its employees were working overtime. For example, Plaintiff and the class were required to rush files or examine conditions on files that were previously underwritten immediately that had a closing date already set for the next day or within the next several days. Plaintiff's manager also handed out work to Plaintiff and the class with instructions to finish the work over the weekends after they had worked a full forty hour week.

19. Indeed, the Plaintiff informed the Defendant's senior management that she and other Underwriters were entitled to be paid overtime. Rather than acknowledge that she was right, the Defendant took various actions in order to force the Plaintiff to quit and to otherwise harass and humiliate the Plaintiff. These actions included verbal abuse by, for example, in a closed door meeting in March, 2013, repeatedly asking Plaintiff in a raised voice: "Why do you want to work here?" and requiring Plaintiff to keep and turn in time cards although no other Underwriter was directed to keep time records; making the obvious effort to keep Plaintiff under surveillance; and transferring Plaintiff to another department that limited her duties to auditing loan files only and ultimately to fire the Plaintiff before she had completed one full year of employment which would have allowed her to file for a claim under the "Family & Medical Leave" act. Plaintiff was employed by Defendant June 4, 2012 to May 15, 2013.

20. Plaintiff was also subjected to verbal abuse (such as shouting and profanity) by loan officers trying to force her to waive conditions on their files so that their loans would be approved. These tirades were witnessed by other employees situated around Plaintiff's workstation. This was done with the knowledge and tacit consent of management. Despite being reported to management, no corrective or disciplinary action was taken. Plaintiff was

informed by management when she inquired that the Loan Officer's disciplinary action was "none of her business."

20. This pattern of harassment that Defendant subjected Plaintiff to was done for a variety of reasons. For example, because Defendant complained about the Plaintiff's practice of reporting loan officers when she discovered discrepancies in the loan files she was required to underwrite. Rather than the file being declined (if, for example, documents in the files provided evidence that that the files didn't meet investor guidelines, Defendant's management took the file from the Plaintiff and pulled the documents in question from the files in order to be able to sell the loans to investors) Plaintiff was required to "sign her name" to the file anyway, or the file was taken from Plaintiff by Defendant's manager. The manager would then sign off on the file, and the Plaintiff was then then notified that the file had been "removed" from her pipeline. On numerous occasions Plaintiff was subjected to one written disciplinary action by the owner and her managers, accused of yelling at loan officers, and Plaintiff had her bonus per loan file cut from $50 per underwritten file to $10 per completed audited loan file when she was moved to another department by management.

22. In the last several months of employment, Plaintiff developed health problems as a result of the verbal abuse and the related stress. This has caused her

to suffer from high blood pressure per her physician. She also suffers from a neck injury caused by working at a non-ergonomic work station. This situation was corrected for the Plaintiff alone after she complained about her workstation and provided management with evidence by emails showing an "ergonomically correct workstation" per the website of the Occupational Safety and Health Administration. Defendant intentionally attempted to force Plaintiff to quit.

23. Plaintiff was treated for these serious medical conditions (a herniated C-7 disc in her neck) with an epidural procedure on May 15, 2013. Plaintiff informed her manager and the owner that she would be back to work on May 30 if the procedure was successful. Plaintiff was told by her immediate manager the week of her surgery that she (her manager) was looking forward to her return to work, and that she should return to work when she was cleared by her doctor.

24. Plaintiff had her surgery on May 15 and, as she had told her employer, planned to return to work on May 30 if the surgery was successful. While she was home recovering, on May 21st, she received a letter dated May 17, 2013 from the head of human resources terminating her immediately for the stated reason that she was unable to perform her job as of May 15.

25. Plaintiff was the only Underwriter required to keep time records. Plaintiff was the only Underwriter kept under constant surveillance. Defendant

failed to keep and maintain time records of the hours worked by the other Underwriters.

26. The foregoing actions of Defendant constitute violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Defendant's actions were willful and not in good faith.

27. Defendant is liable to Plaintiff and the similarly situated Underwriters for actual damages, liquidated damages and equitable relief, pursuant to 29 U.S.C. §216(b).

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO PLAINTIFF ONLY

28. Plaintiff repeats and re-alleges paragraphs 1-27 as though fully set forth herein.

29. Plaintiff complained to her manager about the company's illegal practice of not paying overtime to her and the other Underwriters. In addition, Plaintiff reported to management loan officers who were tampering with documents in files in order to get loans approved and/or sold to investors. Plaintiff also evidenced to management that it was against Investor guidelines (FNMA, FHLMC and purchasing loan investors guidelines) to remove documents from files in order to assure they were purchased. Based upon these incidents, Plaintiff was

subjected to repeated verbal harassment, abuse, and disciplinary actions by management and feared loss of her job if she didn't "approve" files.

30. The actions by the Defendant and its representatives were both intentional and reckless.

31. Defendant's conduct can fairly be described as both extreme and outrageous.

32. This outrageous and extreme conduct caused the Plaintiff to suffer extreme emotional distress. This distress was severe and is ongoing. Due to Plaintiff's termination, she lost her insurance coverage and couldn't afford the $450 monthly fee required for continued insurance coverage under COBRA. Plaintiff's Orthopedic Physician was agreeable two weeks after her procedure to allow her to return to work on a part-time basis. However, he advised that while the first procedure had alleviated the pain, to prevent re-occurrence of the herniated disc she was to have two more epidural procedures in the coming months. Due to the costs of the procedures and loss of insurance coverage, Plaintiff was unable to have the additional procedures. Plaintiff's medical condition is still prevalent.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Susan Lambert, individually and on behalf of all others similarly situated, by her attorneys, demands judgment against the

Defendant and in favor of the Plaintiff and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiffs for the nature, extent and duration of their damages, the costs of this action and as follows:

    A. Certify this as a collective action pursuant to 29 U.S.C. §216(b);

    B. Order the Defendant to file with this Court and furnish to counsel a list of all names, addresses, social security numbers, e-mail addresses and telephone numbers of all Underwriters employed by Defendant who currently work or have previously worked for Defendant during the last three (3) years;

    C. Authorize Plaintiffs' counsel to issue notice at the earliest possible time to all current and former Underwriters employed by the Defendant during the three (3) years immediately preceding this action, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked hours in excess of forty hours in a week during the liability period, but were not paid overtime as required by the FLSA;

    D. Certify one class of individuals who were employed by the Defendant as Underwriters at any time during the relevant statute of limitations period who worked more than 40 hours in a week, but did not receive overtime pay and who were not paid their full compensation semi-weekly;

    E. Declare and find that the Defendant committed one or more of the following acts:

        i. Violated overtime provisions of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated persons who opt-in to this action;

        ii. Willfully violated overtime provisions of the FLSA;

    F. Award compensatory damages, including all overtime pay owed, in an amount according to proof;

G. Award an equal amount as liquidated damages for all FLSA claims;

H. All costs and attorney's fees incurred prosecuting this claim;

I. Leave to amend to add claims under applicable state and federal laws;

J. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and,

K. For such further relief as the Court deems just and equitable.

WITH RESPECT to the Plaintiff's Count II brought under the state law cause of action for intentional infliction of emotional distress on behalf of Plaintiff individually, Plaintiff demands judgment against the Defendant and in favor of the Plaintiff, for a sum that will properly, adequately and completely compensate Plaintiff for the nature, extent and duration of her damages, the costs of this action and as follows:

A. Award compensatory damages in an amount according to proof;

B. Award punitive damages in an amount to be determined at trial;

C. All costs and attorney's fees incurred prosecuting this claim;

D. Leave to amend to add claims under applicable state and federal laws;

E. For such further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand trial by jury.

Dated: October 22, 2013
Respectfully Submitted,

s/Gregory R. Fidlon
One of the Attorneys
for Plaintiffs and the
Proposed Class

Terrence Buehler (Pro Hac Vice Request Pending)
Touhy, Touhy & Buehler, LLP
55 W. Wacker Dr., Suite 1400
Chicago, IL 60601
Tel: (312) 372-2209
Fax: (312) 456-3838
Email: tbuehler@touhylaw.com

Peter Lubin (Pro Hac Vice Request Pending)
DiTommaso-Lubin P.C.
The Oak Brook Terrace Atrium
17W220 22d Street, Suite 200
Oak Brook Terrace, IL 60181
Tel: (630) 333-0000
Fax: (630) 333-0333
Email: psl@ditommasolaw.com

Gregory R. Fidlon (Ga Bar No.: 259317)
Law Offices of Gregory R. Fidlon, P.C.
1200 Abernathy Road
Bldg. 600, Suite 1700
Atlanta, GA 30328
Tel: (770) 807-0083
Fax: (770) 807-0460
Email: greg@fidlonlegal.com